ZEHMER, Chief Judge.
Appellants, Carlos Lidsky and Carlos Lid-sky, P.A., (Lidsky) appeal the trial court’s non-final “Order on Receiver’s Motion for Partial Summary Judgment Pursuant to Sec *633 tion 631.154.”[1] The proceedings were instituted by the Florida Department of Insurance to liquidate First Miami Insurance Company (FMIC) under chapter 631, Part I, known as the “Insurers Rehabilitation and Liquidation Act.” §§ 631.001-631.399, Fla. Stat. (1993). The partial summary judgment required that Lidsky pay to the Department, as receiver of FMIC, the amount of $46,200, plus prejudgment interest. This amount reflects a sum of money transferred by FMIC to Lidsky after the filing of the original petition for liquidation as compensation to Lidsky for providing legal services on behalf of FMIC to hundreds of its insureds.[2] In granting the partial summary judgment the trial court relied exclusively on a conclusive presumption of bad faith and did not afford Lidsky a fair opportunity to rebut the presumption. Because this ruling is erroneous as a matter of law, we reverse and remand for further proceedings.
The Insurer’s Rehabilitation and Liquidation Act (the act) was designed “to effect an equitable apportionment of any unavoidable loss due to insurer insolvency.” Sunset Commercial Bank v. Florida Department of Insurance, 509 So.2d 366, 367 (Fla. 1st DCA 1987). Its stated purpose is “the protection of the interests of insureds, creditors, and the public generally_” See § 631.001(4). To achieve this purpose, the legislative scheme provides that all rights and liabilities of the insurer and its creditors, policyholders, and other interested persons are fixed as of the date of the liquidation order. See § 631.251. However, before the liquidation order is finally entered, the insolvent insurer continues to manage its affairs and has the opportunity to transfer its remaining assets to some of its existing and preferred creditors at the expense of other creditors protected under the act. To prevent unfair distributions, the act provides for a period of up to one year preceding the filing of any successful petition during which a transfer or transfers may be held void or voidable. See §§ 631.261-631.263. Relevant to the instant proceeding is section 631.263 providing that the transfer of any property of the insurer made after the petition is filed, but before the liquidation order is entered, is voidable unless made to a person “acting in good faith,” in which ease the transfer is considered valid against the receiver if made for a present fair equivalent value. However, subsection (3) provides:
A person having actual knowledge of the pending delinquency proceeding shall be deemed not to act in good faith.
(Emphasis added.) Construing this provision as creating a conclusive or irrebuttable presumption of bad faith as a matter of law, the trial court entered partial summary judgment in favor of the Department.
On April 28,1992, the Department filed its petition requesting the trial court to enter an order of liquidation against FMIC on grounds that the insurer was insolvent, and requested entry of an order to show cause why the court should not appoint a receiver for such purposes. The petition was granted to the extent that an emergency order appointing the Department as receiver to conserve FMIC’s assets was entered on May 29, 1992, and a final order of liquidation was entered on June 5, 1992.
The final order of liquidation, in paragraph 19, required all attorneys employed by FMIC to “immediately upon notice of this Order, report to the Receiver on the name, company claim number, and status of each file they are handling on behalf of the Respondent [insurer].” The report was also to include “an accounting of any funds received from or on behalf of the Respondent.” Lidsky was primary defense counsel for FMIC’s insureds, and it was ultimately determined by the Department that Lidsky had received $217,325 from the assets of FMIC within the time limits applicable to voidable transfers under the act. In compliance with the procedural requirements of section 631.154, the Department sent a certified letter to Lidsky demanding the return of the funds. Lidsky responded by alleging that he was a “bona *634 fide purchaser for value,” and requested a hearing. Lidsky also filed a claim with the receivership, alleging entitlement to the $217,325 plus an additional $165,000 in unpaid legal fees.
The Department moved for partial summary judgment regarding two payments made after the date the original petition for order of liquidation was filed. One check, for $34,400, was dated April 29, 1992, one day after the petition was filed, and was endorsed by Lidsky on April 30. The second check, for $46,200, was dated May 26, 1992, and endorsed by Lidsky on May 27. The Department contended in its motion that it was clear Lidsky possessed actual knowledge of the filing of the original petition and therefore, pursuant to section 631.263(3), Lidsky was “conclusively deemed not to have acted in good faith.” It requested the court to enter an order granting partial summary judgment and directing Lidsky to pay over all funds transferred after the fifing of the petition for a receiver. Lidsky filed an affidavit in opposition to the motion in which he denied having knowledge of the fifing of the petition until “sometime after April 30,1992.” Lidsky conceded that he had knowledge of the delinquency proceedings prior to receiving the second check on May 26, 1992.
Based on the foregoing, the trial court granted the Department's motion for partial summary judgment as to the May transfer of funds, but denied the motion in regard to the April payment. Lidsky now argues that the court erred in granting partial summary judgment because there exist disputed issues of material fact regarding whether or not Lidsky acted in good faith. Lidsky contends that the trial court’s construction of section 631.263(3), upon which it relied in granting partial summary judgment, is unconstitutional as applied because it creates an irrebutta-ble presumption.
While section 631.263(3) creates a presumption in the sense that it establishes one state of facts (a person having actual knowledge of the pendency of a delinquency proceeding) as competent proof of another fact (the person having actual knowledge acted in bad faith), for a statutory presumption of this nature to be valid it must satisfy the two-prong test set forth in Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla.1976). First, “there must be a rational connection between the fact proved and the ultimate fact presumed.” Id. at 424. Second, “there must be a right to rebut in a fair manner.” Id. See also State Farm Mutual Automobile Ins. Co. v. Malmberg, 639 So.2d 615 (Fla.1994); Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla.1987); Parikh v. Cunningham, 493 So.2d 999 (Fla. 1986). We hold that the instant statute can meet both tests only if it is construed to allow the presumed fact to be rebutted.
In an effort to defeat preferential treatment of insider creditors whose debts might be satisfied by the insurer in the weeks immediately preceding liquidation and before the Department is appointed receiver and becomes vested with title to the insurer’s assets (see subsections 631.141(1) and (2)), the legislature has targeted for closer scrutiny transfers of assets made to parties having knowledge of the fifing of a petition for liquidation. As the Department argues, the legislative purpose of equal treatment of creditors is clearly expressed in section 631.001(4)(d) and dictates that few exceptions should be made to the rule that all creditors must file their claims with the receiver and share in the distribution of the assets of the estate according to the statutory priorities of distribution. See § 631.271. To achieve this obviously legitimate purpose, the legislature imposed a stop-gap measure in the critical period of time between the filing of the petition and the entry of an order by deeming or presuming that a transferee “with knowledge” of the fifing of the insolvency proceeding acted in bad faith in receiving the transferred funds. It also placed the burden on the transferee to prove the validity of the transfer. See § 631.263(4).
The precise question before us is whether subsection 631.263(3) establishes a rebuttable presumption of bad faith, or establishes a conclusive presumption that cannot be rebutted. In answering this question we are governed by the well-established maxims that if a statute may be construed in more than one manner, we are obligated to give the statute a reasonable construction *635 that conforms to the requirements of the constitution without violating the plain intent of the legislature. E.g., Vildibill v. Johnson, 492 So.2d 1047 (Fla.1986); 49 Fla.Jur., Statutes § 118 (1984). We perceive no impediment to construing the legislative scheme evidenced by these statutes in a manner that comports with constitutional requirements. While section 631.268 creates a presumptive classification, it also provides a reasonable means to rebut that classification. Since the act recognizes that certain transfers of property made in good faith are valid against the receiver (see section 631.263(2)(a)), Lidsky should have been provided the opportunity to rebut the presumption that he acted in bad faith and be allowed to demonstrate that the transfers were made for present fair equivalent value and were not otherwise in derogation of the act’s purpose. The trial court’s construction of the statute as creating a conclusive presumption that affords Lidsky no opportunity for fair rebuttal is clearly in error as a denial of due process. Public Health Trust of Dade County v. Valcin, 507 So.2d at 599. Consequently, the order is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
JOANOS and WEBSTER, JJ., concur.

. We review this appeal pursuant to rule 9.130(a)(3)(C)(ii), Florida Rules of Appellate Procedure.

. In an affidavit filed by Lidsky in the trial court proceedings, it was revealed that from December 1991 until the end of May 1992, Lidsky had over 500 FMIC case files, with 300-400 still active.