729 So.2d 426 (1999)
LIBERTY MUTUAL INSURANCE COMPANY, INC., Appellant,
v.
William M. LEDFORD and Kathy L. Ledford, as parents and natural guardians of Talaya Shan Dale Smith, and the City of Avon Park, Appellees.
No. 98-01330.
District Court of Appeal of Florida, Second District.
February 19, 1999.
Rehearing Denied March 23, 1999.
Jonathan B. Trohn and Christine C. Daly of Lane, Trohn, Bertrand & Vreeland, P.A., Lakeland, for Appellant.
C. Kenneth Stuart, Jr., Lakeland, for Appellees, William M. Ledford and Kathy L. Ledford.
No appearance by the City of Avon Park.
PARKER, Chief Judge.
Liberty Mutual Insurance Company, Inc. (Liberty Mutual) appeals the trial court's order denying its motion for a new trial in this uninsured motorist (UM) coverage case. We agree that the trial court incorrectly entered a declaratory judgment in favor of William M. Ledford and Kathy L. Ledford, as parents and natural guardians of Talaya *427 Shan Dale Smith (the Ledfords) finding that Liberty Mutual had not obtained an informed, knowing rejection of statutory UM coverage. Accordingly, we reverse.
This cause of action arose from an accident in which Talaya, a passenger in a vehicle insured by Liberty Mutual, was severely injured by an uninsured motorist. When Liberty Mutual disputed the amount of UM coverage available under the insurance policy, the Ledfords brought a declaratory judgment action to determine the amount of coverage, and the trial court's order resulted in the first appeal to this court. In Liberty Mutual Insurance Co. v. Ledford, 691 So.2d 1164, 1168 (Fla. 2d DCA 1997) (Ledford I), this court reversed a declaratory judgment finding that Liberty Mutual had not obtained an informed, knowing rejection of statutory UM coverage because of the trial court's refusal to admit relevant documentary evidence. The facts of this dispute are fully set out in Ledford I.
Following this court's remand to the trial court, this case proceeded to jury trial where the jury returned a verdict finding that Liberty Mutual had not obtained an informed, knowing rejection of statutory UM coverage. Thereafter, the trial court rendered a final judgment finding coverage in the amount of $750,000. The trial court denied Liberty Mutual's motion for new trial.
On appeal, Liberty Mutual argues that it is entitled to a presumption that it had obtained an informed, knowing rejection of statutory UM coverage because it presented a rejection form that complied with the statutory requirements. Liberty Mutual also argues that the trial court made two erroneous evidentiary rulings. We summarily deny Liberty Mutual's challenge to the evidentiary rulings. However, we reverse because we find that Liberty Mutual was entitled to the statutory presumption as a matter of law.
Under section 627.727(1), Florida Statutes (1991), the amount of UM coverage is equal to the amount of bodily injury liability purchased by an insured, unless the insured rejects UM coverage or selects lower limits of UM coverage. See Chmieloski v. National Union Fire Ins. Co., 563 So.2d 164, 166 (Fla. 2d DCA 1990). With regard to the rejection or selection of UM coverage, section 627.727(1), Florida Statutes (1991), specifically provides:
The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.
In the instant case, the insurance policy had bodily coverage in the amount of $750,000. However, Liberty Mutual presented a signed rejection form that selected UM coverage of $20,000. It is undisputed that the rejection form complied with the requirements of section 627.727(1). The Ledford's argue that Liberty Mutual was not entitled to the presumption because the account number on the rejection form does not match the account number on the insurance policy.[1] We conclude that the Ledfords' argument fails because, as this court noted in Ledford I, the rejection form clearly applied to the insurance policy. See Liberty Mut. Ins. Co. v. Ledford, 691 So.2d 1164, 1168 (Fla. 2d DCA 1997) ( "there was competent evidence on the face of both documents directly linking them to each other").
The declaration page of insurance policy AS7-151-210841-102 stated that it was a *428 "REWRITE OF AS2-151-210841-012." The policy number on the rejection form is AS2-151-210841-012. Additionally, the insurance policy contained the following language in its declaration: "The limit of insurance referred to in the UNINSURED MOTORISTS COVERAGE endorsement under OUR LIMIT OF INSURANCE is as scheduled below.... FL 20,000." At trial, Frank Favuzza, for the insured, testified that he selected $20,000 in UM coverage for the policy at issue.
Liberty Mutual's agent, Ralph Barnes, confirmed that on January 22, 1992, Favuzza signed a rejection of uninsured motorist coverage which limited his liability to $20,000. Barnes testified that although the rejection form and the policy issued in 1992 contained different policy numbers, the rejection form did apply to the 1992 policy. Barnes explained that the number "XXX-XXXXXX" was the core number of the insurance policy and that the prefix "AS7" was a company designation which would allow for a more favorable rate. In the suffix "012," the "2" indicated 1992, the year the policy was written, and the "01" indicated the first policy of the multiple policies which were written for the insured. As to the difference in the suffix "012" and "102," the issued policy's declaration page clearly states that the policy is a rewrite of AS2-151-210841-012, which is the policy number listed on the UM rejection form. Barnes also confirmed that the insured paid a premium consistent with $20,000 coverage.
The Fourth District Court of Appeal addressed a similar issue in Orion Insurance Company v. Cox, 681 So.2d 760 (Fla. 4th DCA 1996). In Orion, the court concluded that an insured was entitled to the statutory presumption even though the rejection form was issued by a different insurer than the actual insurance policy. See id. at 762. That court reasoned that the intent of the insured to reject UM coverage was evidenced by her signature on the form. See id. at 761. The court also explained that because the insured paid a premium consistent with the lower UM coverage, any decision to hold the insurer liable for a greater amount would be unjustly enriching the insured. See id. at 762.
This case is similar to Orion in that the discrepancy on the rejection form did not change the insured's intent to reduce UM coverage in 1992. Taken together with the evidence that the account number on the insurance policy was a rewrite of that on the rejection form, it is clear as a matter of law that Liberty Mutual was entitled to the statutory presumption in this case. Because the Ledfords did not challenge this presumption by establishing fraud, forgery, or trickery, we find that the trial court should have granted Liberty Mutual's motion for a directed verdict. See Johnson v. Stanley White Ins., 684 So.2d 248, 250 (Fla. 2d DCA 1996) (statutory presumption can be refuted by a showing of fraud, forgery, or trickery). Accordingly, we reverse and remand to the trial court with instructions that a declaratory judgment be entered in favor of Liberty Mutual.
Reversed.
FULMER and SALCINES, JJ., Concur.
NOTES
[1] In fact, the Ledfords have conceded that if the policy numbers had matched, Liberty Mutual would be entitled to the statutory presumption: "If Liberty Mutualand we keep coming back to thisif Liberty Mutual had a signed rejection form AS7, which matches their policy AS7 ... (t)hey would be entitled to a presumptive conclusion."